FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 13, 2021

SEAN F. MCAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KELLY R.,[1] | No. 2:20-cv-00259-MKD |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | ECF Nos. 18, 19 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

1    Before the Court are the parties' cross-motions for summary judgment.  ECF

2  Nos. 18, 19.  The parties consented to proceed before a magistrate judge.  ECF No.

3  6.  The Court, having reviewed the administrative record and the parties' briefing,

4  is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

5  motion, ECF No. 18, and denies Defendant's motion, ECF No. 19.

6                                    **JURISDICTION**

7    The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

8                              **STANDARD OF REVIEW**

9    A district court's review of a final decision of the Commissioner of Social

10  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

11  limited; the Commissioner's decision will be disturbed "only if it is not supported

12  by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

13  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

14  reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

15  (quotation and citation omitted).  Stated differently, substantial evidence equates to

16  "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

17  citation omitted).  In determining whether the standard has been satisfied, a

18  reviewing court must consider the entire record as a whole rather than searching

19  for supporting evidence in isolation.  *Id.*

20

ORDER - 2

1        In reviewing a denial of benefits, a district court may not substitute its

2    judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

3    1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

4    rational interpretation, [the court] must uphold the ALJ's findings if they are

5    supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

6    F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

7    ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless

8    "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

9    *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

10   decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

11   *Sanders*, 556 U.S. 396, 409-10 (2009).

12   **FIVE-STEP EVALUATION PROCESS**

13       A claimant must satisfy two conditions to be considered "disabled" within

14   the meaning of the Social Security Act.  First, the claimant must be "unable to

15   engage in any substantial gainful activity by reason of any medically determinable

16   physical or mental impairment which can be expected to result in death or which

17   has lasted or can be expected to last for a continuous period of not less than twelve

18   months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be

19   "of such severity that he is not only unable to do his previous work[,] but cannot,

20   considering his age, education, and work experience, engage in any other kind of

ORDER - 3

substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the

ORDER - 4

1    enumerated impairments, the Commissioner must find the claimant disabled and

2    award benefits.  20 C.F.R. § 404.1520(d).

3         If the severity of the claimant's impairment does not meet or exceed the

4    severity of the enumerated impairments, the Commissioner must pause to assess

5    the claimant's "residual functional capacity."  Residual functional capacity (RFC),

6    defined generally as the claimant's ability to perform physical and mental work

7    activities on a sustained basis despite his or her limitations, 20 C.F.R. §

8    404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

9         At step four, the Commissioner considers whether, in view of the claimant's

10   RFC, the claimant is capable of performing work that he or she has performed in

11   the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

12   capable of performing past relevant work, the Commissioner must find that the

13   claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

14   performing such work, the analysis proceeds to step five.

15        At step five, the Commissioner considers whether, in view of the claimant's

16   RFC, the claimant is capable of performing other work in the national economy.

17   20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

18   must also consider vocational factors such as the claimant's age, education, and

19   past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

20   Commissioner must find that the claimant is not disabled.  20 C.F.R. §

ORDER - 5

404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On December 5, 2017, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of November 7, 2017.  Tr. 24, 94, 178-84. The application was denied initially and on reconsideration.  Tr. 118-20, 122-24. Plaintiff appeared before an administrative law judge (ALJ) on April 25, 2019.  Tr. 37-93.  On May 22, 2019, the ALJ denied Plaintiff's claim.  Tr. 21-36.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2022, has not engaged in substantial gainful activity since November 7, 2017.  Tr. 26.  At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar

ORDER - 6

degenerative disc disease, cervical degenerative disc disease, asthmatic bronchitis, right ventricular enlargement, and polyarthralgia.  Tr. 26.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 27.  The ALJ then concluded that Plaintiff has the RFC to perform sedentary work with the following limitations:

> [Plaintiff can] lift no more than ten pounds at a time occasionally and can lift or carry five pounds at a time frequently; he can, at one time, stand for fifteen minutes and walk for fifteen minutes; in an eight-hour workday with normal breaks, he can sit for eight hours and can stand [and] walk for two hours total; he can occasionally stoop, crouch, kneel, crawl, and balance; he can occasionally climb ramps and stairs; he can never climb ramps and scaffolds; he cannot work [at] unprotected heights, around hazardous machinery, or around heavy industrial type vibration; he cannot work in marked temperature extremes of heat and cold; he should avoid concentrated exposure to pulmonary irritants; and he needs a clean, well ventilated, temperature controlled environment.

Tr. 27-28.

At step four, the ALJ found Plaintiff is unable to perform any of his past relevant work.  Tr. 31.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as document preparer, election clerk, addresser, and call-out operator.  Tr. 32.  Therefore, the ALJ concluded Plaintiff was not under a

ORDER - 7

disability, as defined in the Social Security Act, from the alleged onset date of

November 7, 2017, through the date of the decision. *Id.*

On May 29, 2020, the Appeals Council denied review of the ALJ's decision,

Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes

of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him disability insurance benefits under Title II of the Social Security Act. Plaintiff

raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence; and

2. Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 18 at 2-3.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinion of Mari

Hunter, ARNP. ECF No. 18 at 3-11.

As an initial matter, for claims filed on or after March 27, 2017, new

regulations apply that change the framework for how an ALJ must evaluate

medical opinion evidence. *Revisions to Rules Regarding the Evaluation of*

*Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

ORDER - 8

C.F.R. § 404.1520c.  The new regulations provide that the ALJ will no longer

"give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to*

*Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §

404.1520c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of

all medical opinions or prior administrative medical findings from medical sources.

20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the persuasiveness of

medical opinions and prior administrative medical findings include supportability,

consistency, relationship with the claimant (including length of the treatment,

frequency of examinations, purpose of the treatment, extent of the treatment, and

the existence of an examination), specialization, and "other factors that tend to

support or contradict a medical opinion or prior administrative medical finding"

(including, but not limited to, "evidence showing a medical source has familiarity

with the other evidence in the claim or an understanding of our disability

program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-

(5).

Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered.  20 C.F.R. §

404.1520c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence
> and supporting explanations presented by a medical source are to
> support his or her medical opinion(s) or prior administrative medical

ORDER - 9

finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 404.1520c(b)(2).[3]  However, when

---

[3] The parties disagree over whether Ninth Circuit case law continues to be controlling in light of the amended regulations.  ECF No. 18 at 4-5; ECF No. 19 at 3-4.  The Court finds resolution of this question unnecessary to the disposition of this case.  "It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of [an] ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those standards."  *Gary T. v. Saul*, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) (citing *Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *3 (W.D. Wash. Apr. 9, 2020)).  "Nevertheless, the Court is mindful that it must defer to the new regulations, even where they conflict with prior judicial precedent,

ORDER - 10

two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 404.1520c(b)(3).

On April 5, 2019, Ms. Hunter, ARNP, a treating provider, rendered an opinion on Plaintiff's functioning.  Tr. 519-23.  Under the new regulations, Ms. Hunter is an acceptable medical source.  20 C.F.R. § 404.1520c(a)(7).  Ms. Hunter diagnosed Plaintiff with scleroderma, left leg numbness, and lumbar compression fracture.  Tr. 519.  Ms. Hunter opined Plaintiff's symptoms are often severe enough to interfere with his attention/concentration; Plaintiff has a moderate limitation in his ability to deal with work stress; Plaintiff can walk one block

_____

unless the prior judicial construction 'follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.'"  *Gary T.,* 2020 WL 3510871, at *3 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005); *Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld unless 'they exceeded the Secretary's authority [or] are arbitrary and capricious.'").

ORDER - 11

without rest; he can sit for 15 minutes at a time and stand for 15 minutes at a time; he can sit and stand/walk for a total of two hours each in an eight-hour work day; Plaintiff needs to walk around every 15 minutes for 15 minutes at a time; Plaintiff needs to be able to shift positions at will; Plaintiff needs to take three to four unscheduled breaks for fifteen minutes each; Plaintiff must use a cane or other assistive device; Plaintiff can occasionally lift less than 10 pounds and can never lift 10 pounds or more; Plaintiff can spend five percent of his time grasping, fingering, and reaching, and cannot bend or twist; and Plaintiff would miss work more than three times per month if he worked. Tr. 521-23. The ALJ found Ms. Hunter's opinion was not persuasive. Tr. 30.

First, the ALJ found Ms. Hunter did not support her opinion with a specific explanation. *Id.* Supportability is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is. 20 C.F.R. § 404.1520c(b)(2). The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is. 20 C.F.R. § 404.1520c(c)(1). Ms. Hunter's opinion contains an explanation of Plaintiff's diagnoses, symptoms, clinical findings, and treatment, and Ms. Hunter noted she had seen Plaintiff at least every three months. Tr. 519-23. The ALJ's finding that Ms. Hunter did not support her opinion with an

ORDER - 12

1    explanation is not supported by substantial evidence. *See Bray v. Comm'r of Soc.*

2    *Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

3         Second, the ALJ found Ms. Hunter's opinion was inconsistent with her own

4    medical records and the longitudinal record. Tr. 30. The more relevant objective

5    evidence and supporting explanations that support a medical opinion, the more

6    persuasive the medical opinion is. 20 C.F.R. § 404.1520c(c)(1). The ALJ found

7    Ms. Hunter's own records do not provide significant support for her opinion, but

8    the ALJ noted the records demonstrate "decreased range of motion, back spasms,

9    and tenderness along the spine," and the ALJ does not point to any of Ms. Hunter's

10   records that are inconsistent with her opinion. Tr. 30. Ms. Hunter's records note

11   Plaintiff has tried multiple medications, heat, ice, stretching, and physical therapy,

12   with continued pain. Tr. 392. She noted Plaintiff appeared in obvious discomfort

13   when standing, he was very guarded and stiff in his positioning, he had diffuse

14   tenderness, and severely limited range of motion mainly due to stiffness/guarding.

15   *Id.* At other appointments with Ms. Hunter, Plaintiff had abnormal range of

16   motion, tender points, pain, and a bit of crepitus in the neck. Tr. 398, 404.

17   Plaintiff also had decreased grip strength in his left hand, and Ms. Hunter noted

18   Plaintiff's neck examination demonstrated muscle and nerve involvement. Tr.

19   408-10.

20

ORDER - 13

1       The ALJ also noted Ms. Hunter's opinion that Plaintiff has manipulative

2  limitations is inconsistent with the longitudinal record, including no significant

3  deficits in gait, strength, and reflexes, and unremarkable findings from the

4  rheumatologist.  Tr. 30.  Despite some normal examination findings, the

5  rheumatologist noted skin thickening, and Plaintiff had a positive Scl-70 and ANA

6  test, and the normal examination findings were in the context of Plaintiff being on

7  prednisone.  Tr. 526-27.  At some appointments, Plaintiff has been noted as having

8  a slow gait, a gait disturbance, and having difficulty getting on/off tables.  Tr. 340,

9  409.  Plaintiff had abnormal range of motion and strength at multiple

10  appointments.  Tr. 409, 450-51, 464-65, 509, 511.  The ALJ also noted the imaging

11  showed only moderate findings, Tr. 30, however the lumbar spine imaging noted

12  moderate to severe discogenic spondylosis, Tr. 423.  The ALJ's finding that Ms.

13  Hunter's opinion is not supported by the record is not supported by substantial

14  evidence.  *See Bray*, 554 F.3d at 1228; *Connett v. Barnhart*, 340 F.3d 871, 875 (9th

15  Cir. 2003).

16       On remand, the ALJ is instructed to reconsider Ms. Hunter's opinion and

17  incorporate the limitations into the RFC or give reasons supported by substantial

18  evidence to reject the opinion.  The ALJ is further instructed to perform the five-

19  step analysis anew, including accepting new evidence and testimony, and

20  reconsidering whether scleroderma is a severe medically determinable impairment.

ORDER - 14

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 18 at 12-16.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

ORDER - 15

explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely consistent with the evidence.  Tr. 28.

### 1. Activities of Daily Living

The ALJ found Plaintiff's activities of daily living were inconsistent with his

symptom claims.  Tr. 29.  The ALJ may consider a claimant's activities that

undermine reported symptoms.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

2001).  If a claimant can spend a substantial part of the day engaged in pursuits

involving the performance of exertional or non-exertional functions, the ALJ may

find these activities inconsistent with the reported disabling symptoms.  *Fair v.*

*Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a

claimant need not vegetate in a dark room in order to be eligible for benefits, the

ALJ may discount a claimant's symptom claims when the claimant reports

participation in everyday activities indicating capacities that are transferable to a

work setting" or when activities "contradict claims of a totally debilitating

impairment."  *Molina*, 674 F.3d at 1112-13.

While the ALJ found Plaintiff's activities of daily living were not consistent

with his allegations, the ALJ pointed to an occasion in 2019 when Plaintiff helped

his children get their car unstuck from a snowy ditch.  Tr. 29.  The ALJ noted

Plaintiff was sore and fatigued afterward, but found the fact that Plaintiff attempted

to help with the stuck vehicle, "shows that he believed he was capable of

1    performing the activity," and Plaintiff did not report an injury from the event.  *Id.*

2    A single incident of Plaintiff assisting his children with getting a vehicle unstuck is

3    not inconsistent with Plaintiff's allegations.  Further, Plaintiff was sore and

4    fatigued after the incident.  Tr. 439.  The ALJ does not point to any other

5    inconsistent activities in the record.  Plaintiff's reported activities are consistent

6    with his allegations.  Tr. 228-35.  The ALJ's finding that Plaintiff's activities of

7    daily living were inconsistent with his symptom claims is not supported by

8    substantial evidence.

9         2.  *Conservative Treatment*

10        The ALJ found Plaintiff's symptom claims were inconsistent with his

11   conservative level of treatment.  Tr. 29.  Evidence of "conservative treatment" is

12   sufficient to discount a claimant's testimony regarding the severity of an

13   impairment.  *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v.*

14   *Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-

15   counter pain medication is evidence of conservative treatment sufficient to

16   discount a claimant's testimony regarding the severity of an impairment)); *see also*

17   *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that the ALJ

18   permissibly inferred that the claimant's "pain was not as all-disabling as he

19   reported in light of the fact that he did not seek an aggressive treatment program"

20   and "responded favorably to conservative treatment including physical therapy and

ORDER - 18

1  the use of anti-inflammatory medication, a transcutaneous electrical nerve

2  stimulation unit, and a lumbosacral corset").

3    The ALJ found that Plaintiff's "arc of treatment has largely been

4  conservative." Tr. 29.  The ALJ noted that while Plaintiff consulted with a

5  neurosurgeon, the surgeon recommended weight loss, core strengthening

6  treatment, muscle relaxers, and anti-inflammatories, and stated that if the

7  conservative measures failed, surgery could then be considered. *Id.*  Plaintiff also

8  received trigger point injections.  Tr. 308.  The Ninth Circuit has questioned

9  whether occipital nerve block and trigger point injections can constitute

10 "conservative treatment." *See Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th

11 Cir. 2010); *Garrison*, 759 F.3d at 1015 (casting doubt on characterizing epidural

12 injections and physical therapy as "conservative treatment").

13   Further, the cited neurosurgery consult relates only to Plaintiff's lumbar

14 impairment.  Tr. 361.  Plaintiff also alleges limitations due to his other

15 impairments which the ALJ rejected, such as Plaintiff's reported pain and

16 numbness that radiates down his arms into his hands, Tr. 62, 72-73, which causes

17 difficulty lifting and carrying items with his left hand, and causes difficulty

18 gripping items bilaterally, Tr. 72-73.  While the ALJ found there is not objective

19 evidence of a medically determinable impairment that could reasonably cause

20 Plaintiff's bilateral hand symptoms, the ALJ erred in failing to address objective

ORDER - 19

1    evidence that supports Plaintiff's claims, as discussed *infra.*  The ALJ does not

2    provide any analysis as to whether Plaintiff received only conservative treatment

3    for his other impairments, nor whether any additional treatment was suggested for

4    Plaintiff's other impairments.  The ALJ's finding that Plaintiff's symptom

5    complaints were inconsistent with Plaintiff's conservative treatment is not

6    supported by substantial evidence.

7        *3.  Inconsistent Objective Medical Evidence*

8        The ALJ found the objective medical evidence was inconsistent with

9    Plaintiff's symptom claims.  Tr. 29.  An ALJ may not discredit a claimant's

10   symptom testimony and deny benefits solely because the degree of the symptoms

11   alleged is not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857;

12   *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601;

13   *Burch*, 400 F.3d 676, 680 (9th Cir. 2005).  However, the objective medical

14   evidence is a relevant factor, along with the medical source's information about the

15   claimant's pain or other symptoms, in determining the severity of a claimant's

16   symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §

17   404.1529(c)(2).

18       As the Court finds the other two reasons offered by the ALJ to reject

19   Plaintiff's symptom claims are not supported by substantial evidence, the ALJ

20   erred in rejecting Plaintiff's claims as inconsistent with the objective medical

ORDER - 20

1  evidence.  For the purposes of the remand, the Court notes that the ALJ rejected

2  Plaintiff's reported bilateral hand pain and resulting limitations, because there is

3  not objective evidence of an impairment that could reasonably cause the

4  symptoms.  Tr. 26.  However, Plaintiff had decreased grip strength and finger

5  extension in the left hand, Tr. 409, and Plaintiff was noted as having mild to

6  moderate degenerative changes in the cervical spine, Tr. 431, cervical neck pain,

7  and an examination that was positive for nerve involvement, Tr. 410.  Plaintiff had

8  decreased strength, Tr. 465, abnormal cervical range of motion, Tr. 476, and had

9  numbness and pain down his left arm and into his hand at physical therapy, Tr.

10  473-74.

11      On remand the ALJ is instructed to reconsider Plaintiff's symptom

12  testimony and incorporate the reported limitations into the RFC or give clear and

13  convincing reasons to reject the symptom claims.

14                              **CONCLUSION**

15      Having reviewed the record and the ALJ's findings, the Court concludes the

16  ALJ's decision is not supported by substantial evidence and is not free of harmful

17  legal error.  Accordingly, **IT IS HEREBY ORDERED**:

18      1. The District Court Executive is directed to substitute Kilolo Kijakazi as

19  Defendant and update the docket sheet.

20

ORDER - 21

2. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED August 13, 2021.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 22